IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| DANNY DANIELS, | ) | CASE NO. 1:16 CV 2592 |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

## Introduction

Before me[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Danny Daniels, for disability insurance benefits. The Commissioner has answered[2] and filed the transcript of the administrative record.[3] Under my initial[4] and procedural[5] orders the parties have briefed their

---

[1] ECF # 21. The parties have consented to my exercise of jurisdiction.

[2] ECF # 9.

[3] ECF # 10.

[4] ECF # 5.

[5] ECF # 11.

positions.⁶ and filed supplemental charts⁷ and the fact sheet.⁸ They have participated in a telephonic oral argument.⁹

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Daniels, who was 59 years old at the time of the administrative hearing,¹⁰ graduated high school and has completed additional classes in real estate and business administration.¹¹ His past relevant employment includes works as a fast food manager.¹²

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Daniels had severe impairments consisting of ulcerative colitis (20 CFR 404.1520(c)).¹³ The ALJ made the following finding regarding Daniels's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that , through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can frequently climb ramps and stairs, ladders, ropes, and scaffolds; frequently stoop, kneel, crouch, and crawl; must avoid concentrated exposure to hazards; and he needs access to restroom nearby (i.e. a smaller work environment

---

⁶ ECF # 15 (Daniels's brief), ECF #18 (Commissioner's brief).

⁷ ECF # 18-1 (Commissioner's charts); ECF # 15-1 (Daniels's charts).

⁸ ECF # 14.

⁹ ECF # 22.

¹⁰ ECF # 14 at 1.

¹¹ ECF # 10, Transcript ("Tr.") at 37.

¹² *Id.* at 17.

¹³ *Id.* at 13.

instead of a large factory where he would have to travel a distance to her to a restroom).[14]

Given that residual functional capacity, the ALJ found Daniels capable of his past relevant work as fast food manager and, therefore, not under a disability.[15]

**B.      Issues on judicial review**

Daniels asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Daniels presents the following issues for judicial review:

- Whether the decision of the ALJ is supported by substantial evidence, where the judge failed to recognize plaintiff's fatigue due to anemia to be a severe impairment and failed to account for fatigue in formulating plaintiff's residual functional capacity.

- Whether the ALJ's decision us supported by substantial evidence where the judge failed to properly weigh the opinions of Dr. Mohammed Khan, one of plaintiff's treating physicians.

- Whether the ALJ properly weighed the third-party statement of Pat Rosello, Jr.[16]

The Court recommends that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must reversed and remanded.

---

[14] *Id.* at 14.

[15] *Id.*

[16] ECF # 15 at 1.

## Analysis

### A. Standards of review

#### 1. *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[17]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

#### 2. *The treating source rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

---

[17] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[18]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[19]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[20] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[21]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[22] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[23] nevertheless, it must be "well-supported by medically acceptable

---

[18] 20 C.F.R. § 416.927(d)(2). The companion regulation for disability insurance benefits applications is § 404.1527(d)(2). [Plaintiff's last name only] filed only an application for supplemental security income benefits.

[19] *Id.*

[20] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[21] *Id.*

[22] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[23] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

clinical and laboratory diagnostic techniques" to receive such weight.[24] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[25]

In *Wilson v. Commissioner of Social Security*,[26] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[27] The court noted that the regulation expressly contains a "good reasons" requirement.[28] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[29]

---

[24] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[25] *Id.* at 535.

[26] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[27] *Id.* at 544.

[28] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[29] *Id.* at 546.

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[30] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[31] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[32] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[33]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[34] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[35] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[35] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[36] *Blakley v. Commissioner of Social Security*,[37] and *Hensley v. Astrue*.[38]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[39] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[40] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[41] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[42]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[43] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the

---

[36] *Rogers*, 486 F.3d at 242.

[37] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[38] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[39] *Gayheart*, 710 F.3d at 376.

[40] *Id.*

[41] *Id.*

[42] *Rogers*, 486 F.3d at 242.

[43] *Gayheart*, 710 F.3d at 376.

standards for controlling weight set out in the regulation.[44] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[45] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[46] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[47]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[48]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[49] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not

---

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Rogers*, 486 F.3d 234 at 242.

giving those opinions controlling weight.[50] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[51] or that objective medical evidence does not support that opinion.[52]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[53] The Commissioner's *post hoc* arguments on judicial review are immaterial.[54]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

---

[50] *Blakley*, 581 F.3d at 406-07.

[51] *Hensley*, 573 F.3d at 266-67.

[52] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[53] *Blakley*, 581 F.3d at 407.

[54] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[55]

- the rejection or discounting of the weight of a treating source without assigning weight,[56]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[57]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[58]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefore,[59] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[60]

The Sixth Circuit in *Blakley*[61] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to

---

[55] *Blakley*, 581 F.3d at 407-08.

[56] *Id.* at 408.

[57] *Id.*

[58] *Id.* at 409.

[59] *Hensley*, 573 F.3d at 266-67.

[60] *Friend*, 375 F. App'x at 551-52.

[61] *Blakley*, 581 F.3d 399.

support the ultimate finding.[62] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[63]

In *Cole v. Astrue*,[64] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[65]

**B.     Application of standards**

This matter presents a Step Two question of whether the ALJ erred in not finding anemia and fatigue as severe impairments, and also raises two challenges to decisions to attach no weight to the opinion of a medical treating source and to the opinion of the claimant's life partner. For the reasons stated below, I will conclude that the decision of the Commissioner must be reversed and the matter remanded for further proceedings.

---

[62] *Id.* at 409-10.

[63] *Id.* at 410.

[64] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[65] *Id.* at 940.

*1.  Step Two*

The ALJ in this case found only ulcerative colitis as a severe impairment at Step Two.[66] Daniels contends that his consistent complaints of fatigue, which he asserts are "probably attributable" to anemia,[67] should have been included as a severe impairment by the ALJ, and all resulting functional limitations from such fatigue should have been incorporated into the RFC.[68]

The Commissioner focuses on the assertion that anemia is the underlying condition, and then contends that "aside from being diagnosed with anemia, there is little medical evidence in the record to support [Daniels's] contention that his anemia was a severe impairment."[69] To that point, the Commissioner argues that Daniels was diagnosed with "mild" anemia four years before he stopped working, and that "multiple treatment notes" reflecting "objective medical evidence" do not support the degree of weakness and loss of stamina alleged by Daniels.[70] Moreover, the Commissioner notes that with the exception of statements from Dr. Mohammed Kahn, Daniels's treating physician, that Daniels had "anemia" and "[t]hrombocytopenia[71] and fatigue, which is multifactorial," which points were

---

[66] Tr. at 13.

[67] ECF # 15 at 8-9.

[68] *Id.*

[69] ECF # 18 at 10.

[70] *Id.*

[71] Low platlet count. See, ECF # 18, Attachment 1 at 5.

"good enough reason[s] for me" to keep Daniels on disability,"[72] there were no other medical opinions as to limitations from anemia.[73]

The claimant must provide the evidence to support the finding that an impairment is severe within the meaning of Step Two.[74] If an ALJ errs by failing to recognize an impairment as severe at Step Two, any resulting error is harmless if the ALJ appropriately considers that impairment, and any limiting effects therefrom, at Step Four.[75]

Here, the ALJ did discuss the complaints of weakness and loss of energy and stamina at Step Four. There, the ALJ found that the objective evidence did not support the degree of limitations asserted by the claimant.[76] The ALJ observed "the record shows that the claimant had no limb weakness and 5/5 strength in his upper and lower extremities."[77]

Further, and as will be discussed more fully below, the ALJ here gave only limited weight to a more restrictive functional opinion from Dr. Dariush Saghafi, M.D., a consultative examiner, and assigned no weight to the functional opinion of Dr. Kahn.[78] In the case of Dr. Saghafi, the ALJ found that his functional opinion was based primarily on

---

[72] Tr. at 335.

[73] ECF # 18 at 11.

[74] *Rabbers v. Comm'r of Social Security*, 582 F.3d 647, 652 (6th Cir. 2009).

[75] *Walton v. Astrue,* 773 F.Supp.2d 742, 747 (N.D. Ohio 2011)(citations omitted).

[76] Tr. at 16.

[77] *Id*. at 17 (citing record).

[78] *Id*. at 16.

Daniels's subjective complaints and not on the objective medical evidence, which evidence was "noted for being unremarkable."[79] As regards Dr. Khan, the ALJ found that his opinion "lack[ed] specificity" and ventured into the ultimate decision as to disability, which is an area reserved to the Commissioner.[80]

## 2. *Step Four*

Daniels maintains that Dr. Kahn's specific reference to anemia and low platlets, in connection with fatigue, were specific findings that required some greater analysis by the ALJ.[81] He argues that the ALJ's failure to give a detailed, credible reason for rejecting Dr. Kahn's functional finding in this regard constitutes a violation of the treating physician/ good reasons rule requiring reversal or remand.[82]

Unfortunately neither Dr. Kahn's functional opinion nor the analysis by the ALJ are textbook examples of best practices in their respective areas. In the first instance, Dr. Kahn is not identified in the opinion as Daniels's treating physician, although the other medical sources, such as Dr. Saghafi, and the state agency consultants, are properly described according to their role. This raises real doubt as to whether the ALJ here attempted to weigh the opinion of Dr. Kahn according to the special, and more deferential rules applicable to

---

[79] *Id.*

[80] *Id.* at 16-17.

[81] ECF # 15 at 11.

[82] *Id.* at 10-11.

-15-

treating physicians. Certainly nothing in the opinion provides support for concluding that the ALJ did so.

Further, even assuming that the any special deference owed to the opinion of a treating source and set out in decisions such as *Gayheart* has now been reduced to a shadow of its former self by years of case law interpreting substantial compliance with *Gayheart* to mean something virtually indistinguishable from the standard applicable to any opinion from any source, it remains true that good reasons need to be stated for not crediting the functional opinion of a treating source.

Here, Dr. Kahn's opinion states - imperfectly, but on its face - a connection between low platlets and anemia and the resulting functional limitation of fatigue. Moreover, there seems to be no doubt that the record establishes diagnoses of low platlets and of anemia. Further, and as was implicitly recognized by the ALJ, the record shows low energy and loss of stamina by Daniels. Indeed, the ALJ at Step Four made note that Daniels could not prove these things produced limitations "to the degree" he alleged.[83]

In this situation, the ALJ relied on the fact that Daniels had excellent strength in his extremities and no limb weakness - reasons the ALJ repeated almost word for word no fewer than three times in his Step Four analysis.[84] Whatever the truth of those observations, and they are rooted in objective findings, the fact that Daniels had strength in his extremities is not a good reason for rejecting a finding that he had fatigue as a result of anemia. The ability

---

[83] Tr. at 16.

[84] *Id*. at 16-17.

to display strength in a single test is not a measure of the ability to exert oneself over time, such as would constitute limiting fatigue. And thus the multiple citations to these individual strength measurements are not good reasons for overturning the opinion of a treating source as to fatigue arising from diagnosed medical conditions.

The ALJ gave no weight to the functional opinion of Pat Rosello, the life partner of Daniels.[85] The ALJ here stated that he gave "some consideration" to this opinion, he concluded that the record did not support "the conclusion that the claimant could not work," noting that disability determinations are for the Commissioner to make.[86]

I have previously remarked on the almost childish game of "gotcha" that ALJs seemingly delight in playing with those who believe that their opinion in a disability case might include a comment about disability. There is no doubt that the legal finding of disability is reserved to the Commissioner. But there should also be no doubt that a single statement of an opinion in this regard by a source should not be treated by ALJs as proof that the entire opinion from such a source has been so hopelessly contaminated that it must be totally banished from sight.

Here, the opinion from Pat Rosello is consistent with Daniels's complaints of fatigue, detailing how, over time, a person who worked extended hours without many breaks became subject to "more frequent periods of bad days" such that he is not capable of performing even

---

[85] *Id*. at 17.

[86] *Id*.

part-time work.[87] As such, this opinion is consistent with that of Dr. Kahn and with Daniels's own reports, as well as with the medical diagnoses. Further, to the degree that it is allegedly inconsistent with the strength findings, such an analysis, as discussed above, does not yield a good reason for discounting more evidence of fatigue.

Because, as noted, other grounds exist to remand this matter, it is not strictly necessary or clearly decisive to conclude that the ALJ erred in his treatment of Pat Rosello's opinion. But, for the reasons stated above, there are good grounds to find that this opinion was discounted for less than good reasons.

## Conclusion

For the reasons stated, I find that the decision of the Commissioner denying disability benefits to Danny Daniels is not supported by substantial evidence. Thus, that decision is hereby reversed and the matter remanded for further proceedings consistent with this opinion.


Dated: November 20, 2017          s/ William H. Baughman, Jr.
                                  United States Magistrate Judge

---

[87] *Id*. at 184.